**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **DDR HOLDINGS, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CASE NO. 2:06-CV-42-JRG |
| | § | |
| **HOTELS.COM, L.P., et al.,** | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff DDR Holdings, LLC's ("DDR") Motion to Compel International Cruise & Excursion Gallery, Inc. and OurVacationStore.com, Inc. (collectively "ICE & OVS") to respond to DDR's Interrogatory No. 2 and provide their Total Revenue information as requested. (Dkt. No. 348.) After considering the parties' written submissions, the Court **GRANTS** DDR's Motion to Compel and **ORDERS** ICE & OVS to supplement their response to Interrogatory No. 2 within 10 days to provide the "Total Revenue" figures requested by DDR.

**I.   BACKGROUND**

ICE & OVS are outsourcing providers of e-commerce services to a multitude of business that sell travel products over the internet. In this suit, DDR is asserting three e-commerce patents that allegedly read on ICE & OVS's methods, processes and technology. Specifically, DDR contends that ICE & OVS infringe the patents-in-suit when ICE & OVS create, host, and maintain on-line stores that sell travel packages over the internet. According to ICE & OVS, sales and bookings of travel packages can be completed in one of three ways:

(1) Made entirely online, through the hyperlinked websites ("Web-only sales");

>  (2) Made entirely over the phone to call centers and generated through marketing efforts other than the linked websites ("Phone-only sales");
>
>  (3) Started online as in (1) but completed over the phone as in (2) ("Hybrid sales").

(Dkt. No. 348.) The parties agree that the revenue attributable to Web-only sales is relevant to this case and that the revenue attributable to Phone-only sales is not relevant. DDR contends that the revenue attributable to Hybrid sales is also relevant based upon its theories of infringement. ICE & OVS maintains its revenue on a gross, per-Client basis (which it calls "Total Revenue"), but it does not separate revenue attributable to Web-only, Phone-only or Hybrid sales as identified above.

Through the Motion to Compel now before the Court, DDR asks the Court to require ICE & OVS to identify Total Revenue, a topic allegedly covered in DDR's Interrogatory No. 2, which was first served in 2006:

> Interrogatory No. 2: Identify each person, company, or entity for whom YOU have received revenue in connection with providing services or products at any time since September 30, 2003 ("Client"), where **Your services or products relate to any web site or program You control that offers commercial opportunity to Internet surfers who have followed a hyperlink from a web page controlled by YOUR Client to a web page controlled by YOU,** including but not limited to any services or products related to the web site or programs identified on page 2 of DDR's Initial Disclosure Statement, and for each identified Client, state (a) the domain name, subdomain name, URL, and IP address of the web page that the Client controls; (b) the domain name, subdomain name, URL, and IP address of the linked web page that You control; (c) the names of any hyperlinks linking the two pages; (d) the sum of payment collected on account of YOUR work for the Client by month; and (e) the person or persons most responsible for designing and maintaining the linked web page that You control.

(Dkt. No. 361, Ex. 1) (Emphasis added). ICE & OVS respond that Interrogatory No. 2 does not ask for Total Revenue, but rather Web-only revenue, which has already been provided to DDR.

DDR contends that Interrogatory No. 2 does ask for Total Revenue, because services products that "relate" to ICE & OVS's websites may be read to include both Web-only and Hybrid sales.

## II. ANALYSIS

Interrogatory No. 2 does not specifically seek discovery of "Total Revenue" figures. Instead, it broadly seeks the revenue figures that "relate" to ICE & OVS's websites. When providing DDR's infringement theories the appropriate amount of latitude at this stage of the case, the Court believes that Hybrid sales "relate" to ICE & OVS's websites within the context of Interrogatory No. 2, because customers first log-on to the accused website before telephoning a call center to complete their transactions. Therefore, Interrogatory No. 2 cannot be fully answered unless and until ICE & OVS provides both Web-only and Hybrid sales revenue numbers. In light of ICE & OVS's representation that it (1) does not have specific revenue figures for Hybrid sales only and (2) cannot calculate Hybrid sales only revenue information, the course of action most likely to lead to the discovery of admissible evidence is for ICE & OVS to provide Total Revenue information in response to Interrogatory No. 2.

ICE & OVS compile Total Revenue statistics in their ordinary course of business, and it therefore would not be burdensome to hand over this information at this stage of the case. The Court recognizes that the discoverability of potential evidence and the admissibility of evidence (or the proper reliance on such evidence) are different things subject to two different standards. Therefore, while the Court requires the production of "Total Revenue" figures in the context of this motion, the Court takes no position on whether it would be appropriate for DDR's damages expert to rely upon "Total Revenue" in its damages calculations.

### III.  CONCLUSION

The Court **GRANTS** the Motion to Compel and **ORDERS** ICE & OVS to supplement their response to Interrogatory No. 2 within 10 days to provide the "Total Revenue" figures requested by DDR.

**So ORDERED and SIGNED this 18th day of July, 2012.**

                                              RODNEY GILSTRAP
                                              UNITED STATES DISTRICT JUDGE