IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DDR HOLDINGS, LLC, ) | |
| ) | |
|    Plaintiff and Counterdefendant, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 2-06-CV—42 (RG) |
| ) | |
| HOTELS.COM, L.P., EXPEDIA, INC.; ) | |
| TRAVELOCITY.COM, L.P.; ) | |
| SITE59.COM, LLC; ) | **JURY TRIAL DEMANDED** |
| INTERNETWORK PUBLISHING ) | |
| CORPORATION d/b/a LODGING.COM; ) | |
| NEAT GROUP CORPORATION; ) | |
| ORBITZ WORLDWIDE, LLC; ) | |
| INTERNATIONAL CRUISE & ) | |
| EXCURSION GALLERY, INC.; ) | |
| OURVACATIONSTORE.COM, INC.; ) | |
| NATIONAL LEISURE GROUP, INC.; ) | |
| WORLD TRAVEL HOLDINGS, INC.; ) | |
| and DIGITAL RIVER, INC., ) | |
| ) | |
|    Defendants and Counterclaimants. ) | |

## DDR'S MOTIONS IN LIMINE

DDR Holdings, LLC ("DDR") moves *in limine* that Defendants, and their respective attorneys and witnesses be instructed not to mention or aver to, in the presence of the jury, either directly or indirectly, any of the matters set forth below, unless and until such matters have been first called to the Court's attention, out of the presence of the jury, and a favorable ruling received as to the admissibility of those matters.

DDR further requests that Defendants' attorneys be specifically instructed to inform all of their witnesses not to volunteer, inject, disclose, state or mention in the presence of the jury any of the matters below, unless specifically questioned thereon and after prior ruling by the Court.

    **1.**    **Advice of Counsel:** Defendants have never disclosed under P.R. 3-8 any opinion letter from any attorney concerning the validity of the DDR Patents or whether Defendants'

1

actions infringed the DDR Patents and have maintained the attorney-client privilege. Yet Defendants have declined to agree not to mention to the jury any opinion of counsel that the DDR Patents are invalid or not infringed.

One Defendant, ICE/OVS, has even designated its in-house counsel as a witness. Special care is required if that witness testifies.

**2. References to Prior Claims or Forms of Relief Asserted by DDR In This Lawsuit That Have Been Dropped:** Due to case management and orders from this Court, and based on discovery received, DDR has substantially narrowed the case and DDR's contentions. Defendants should not be able to reference contentions or patent claims that are no longer asserted in this trial, as it serves no proper purpose. FRE 401-403; *EZ Dock, Inc. v. Shafer Systems Inc.*, 2003 WL1610781 at *13 (D. Minn. March 8, 2003) (plaintiff's "dismissal of certain claims had no relevance to the patent infringement claim the jury must decide"). That is particularly the case here, where DDR was restricted to no more than 10 claims (now nine), and the remainder simply held in abeyance pending the outcome of the October 2012 trial.

**3. Products and Third Parties DDR Has Not Accused of Infringement:** Item #2 above relates to claims previously made but dropped or deferred. This item #3 relates to products or parties (i.e., parties other than Defendants) that DDR never said were infringing. No reference should be made to such products or parties, nor to the fact that DDR did not charge such other products or parties with infringement. The mere fact that DDR has not made an infringement accusation does not imply that none could be made. Such matters are irrelevant to any issue in this case and are likely to cause jury confusion (or result in satellite litigation), and are inadmissible under FRE 401-403.

  **4.**   <u>**Mentioning Time Constraints on Patent Office Employees**</u>: The parties have agreed that the Court may preclude: "Any reference criticizing the Patent Office or its employees by suggesting that the PTO and its examiners lack expertise, are overworked, are not diligent, or are prone to error; or that the Patent Office allows 'junk patents' or 'submarine patents'; or that the patent system allows too many patents." Yet Defendants refuse to agree to DDR's similar request for the Court to block references to examiners having limited time, or not reviewing references sufficiently, or reviewing references before them in only in a limited way.

  It is well-recognized that contentions regarding examiner time considerations are not relevant and would be calculated impermissibly to undermine the statutory presumption that an issued patent is valid and enforceable found in 35 U.S.C. § 282; *Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359 (Fed. Cir. 1984) (presumption). Cases granting or approving limitations against talking about patent examiner time constraints include *Mass Engineered Design, Inc. v. Ergotron, Inc.*, Case No. 2:06-cv-272-LED, Dkt. 582-1 (E.D. Tex. Oct. 20, 2008) (granting limine # 30); *Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1220 (Fed. Cir. 2002) (approving "district court's statement that it 'did not expect to hear . . . about overworked examiners or negligent examiners or anything else.'"); *see W. Elec. Co., Inc. v. Piezo Tech., Inc.,* 860 F.2d 428, 433 (Fed. Cir. 1998) ("questions that might discredit an examiner are irrelevant"). Further, allowing such testimony would open the door for DDR to explain the unusually high level of scrutiny given to these patents, the number of PTO personnel involved, and how the examination was more exhaustive than usual. The presumption of validity relies on the administrative expertise of the PTO; their examiners are well-skilled in spending their time efficiently and on matters needed to make good decisions. They spend the time they need to spend, and how much that turned out to be for a given patent lacks relevance.

**5.     Calling Patents "Monopolies" or Denigrating the Patent System:** The Federal Circuit (when it has squarely discussed the issue) has called suggestions that patents are "monopolies" or that granting a patentee a remedy may limit consumer choice have been called "prejudicial," "erroneous," "pejorative," "irrelevant," "misleading," "destructive" of the patent system, and an "obfuscation." *Jamesbury Corp. v. Litton Indus. Products, Inc.,* 756 F.2d 1556, 1557-59 (Fed. Cir. 1985) (disapproving of characterization of a patentee as a "monopolist"; characterization of a patent as a monopoly is "misdirected"; it is improper to "supplement the statutory body of law governing patent validity by interjecting language to the effect that the public must be 'protected' against a 'monopoly'; noting that the term is "commonly regarded as pejorative"; a jury instruction referring to "the patent monopoly" was "legally erroneous and prejudicial."); *Carl Schenck, A.G. v. Nortron Corp.*, 713 F.2d 782, 786 n.3 (Fed. Cir. 1983) (Markey, C.J.) ("Nowhere in any statute is a patent described as a monopoly. The patent right is but the right to exclude others, the very definition of 'property.'…. It is but an obfuscation to refer to a patent as 'the patent monopoly' or to describe a patent as an 'exception to the general rule against monopolies.' That description, moreover, is irrelevant when considering patent questions …"); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1367 (Fed. Cir. 1984) ("The patent system, which antedated the Sherman Act by a century, is not an 'exception' to the antitrust laws, and patent rights are not legal monopolies in the antitrust sense of that word."); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1160 n.8 (6th Cir. 1978) ("The loose application of the pejorative term 'monopoly,' to the property right of exclusion represented by a patent, can be misleading. Unchecked it can destroy the constitutional and statutory scheme reflected in the patent system.").

6. **References to Specific Equitable Issues:** Defendants have agreed that the Court may grant a *limine* motion to bar parties from raising issues that relate, if at all, to equitable issues reserved for the Court. However, Defendants have declined DDR's request to bar mention of specific matters that Defendants may wish to raise, which are applications of that rule.

In this case, defendants have suggested that DDR did not disclose all pertinent prior art to the Patent Office during reexamination (or original patent prosecution). Although the fact that a given reference was not before the PTO may be admissible, and thus Defendants may be entitled to prove a given reference was not considered, Defendants are not entitled to suggest that the reason for not considering such references was on account of actions or non-actions by DDR or its attorneys. DDR's alleged knowledge of a reference is irrelevant to any issue outside of inequitable conduct, which is not for trial. And, even to the extent that Defendants can show some arguable basis of relevance for testimony about DDR's knowledge, the prejudicial impact of hinting or suggesting that DDR committed some "fraud" on the PTO or misled the PTO overwhelms the probative value of such evidence. FRE 403.

Likewise, Defendants should not be allowed to question the extent or quantity of DDR's pre-suit investigation. That subject likewise has no bearing on any issue before the jury.

7. **References to DDR's Alleged Lack of Investigation Before Making Statements to the Patent Office During Reexamination:** Defendants asked deposition questions of a non-party witness, Mr. Levine from SexToy/Convergent, concerning whether DDR's counsel had contacted him before making statements about "SexToy" to the Patent Office during reexamination. Such testimony, or testimony about the scope of any other type of investigation by DDR's counsel's, is irrelevant and unduly prejudicial to DDR.

First, such matters are relevant, if at all, only to equitable issues and should be excluded under the stipulated *in limine* proposal. Second, the specific Levine questioning ignored the fact that, under the Patent Act, 35 U.S.C. § 301, a reexamination procedure is limited to consideration of "patents and printed publications"; accordingly, consideration of "prior use" or activity by a company like SexToy/Convergent could not have been done in reexamination. Thus, there would have been no purpose for DDR's counsel to have contacted Levine/Convergent/SexToy.

8. **Relative Importance of Claim Elements:** The Court should not allow any suggestion that one claim element of any asserted patent claim is more important than any other claim element. The claims define the invention as a whole. *See, e.g., Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention…."); *Radio Steel & Mfg. Co. v. MTD Products, Inc.,* 788 F.2d 1554, 1556 (Fed. Cir. 1986). Statements of this sort would implicitly mischaracterize law and would pose a significant danger of irreversible prejudice, confusion of the issues, and misleading the jury that could not be corrected by instruction from Court. FRE 403. This Court granted this request in *Mass Engineered Design, Inc. v. Ergotron, Inc.*, Case No. 2:06-cv-272-LED, Dkt. 582-1 (E.D. Tex. Oct. 20, 2008) (granting limine # 31).

9. **Patent Claims Not Conflated:** Each patent and patent claim must be considered on its own merits. The Court should not allow any statements or testimony suggesting that DDR's claims were a single "invention" or may be considered as though they were one. Specifically, Defendants have suggested that, because DDR filed a terminal disclaimer in connection with the '572 Patent, it is not patentably different from the '135 Patent, or because the later patents are continuations of the first, they are not patentably distinct or directed to the same invention.

It is well understood that the filing of a terminal disclaimer does not constitute an admission that the claims are patentably indistinct or that the two patents are directed to the "same invention." *Quad Environmental Technologies Corp. v. Union Sanitary District*, 946 F.2d 870, 874 (Fed. Cir. 1991) ("is not an admission of obviousness of the later-filed claimed invention in light of the earlier-filed disclosure…. It is improper to convert this simple expedient of 'obviation' [of a rejection] into an admission or acquiescence or estoppel on the merits."). Terminal disclaimers are filed on patents as a whole, and a patentee may decide to file a terminal disclaimer because one specific claim has certain characteristics compared to another claim; those may be claims not set for trial.

Likewise, a continuation application is filed for the very purpose of allowing an applicant to exercise the right to introduce new claims. *See* 35 U.S.C. § 120; MPEP 201.07 ("At any time before the patenting … of … his or her earlier … application, an applicant may have recourse to filing a continuation in order to introduce into the application a new set of claims and to establish a right to further examination by the primary examiner.").

It is misleading to suggest that different patents or patent claims are the same, based only on the fact of a terminal disclaimer or a continuation filing. (This motion does not preclude any party from comparing two sets of claims to identify similarities or differences.)

**10. Suggesting That a Defendant Does Not Infringe the DDR Patents Because Defendant Uses 'Look and Feel' Elements Directed by a Customer:** Defendants may attempt to excuse their infringement on the ground that it was not their fault but rather mandated by Defendants' customers. That is not an element of the claim construction under the Court's claim construction rulings; indeed, Defendants did not ask the Court for any interpretation requiring

7

such feature, nor is it an excuse from patent infringement under the law. It would mislead the jury to allow such arguments to be made.

11. **Arguments That Infringement of '135 or '572 Patents (but not '399 Patent) Requires Three Independent Entities:** Defendant Digital River has argued that infringement of the '135 and '572 Patents require three independent entities. That is not an element of the claim under the Court's claim construction ruling, for those two patents. *See* DDR Opp. MSJ, Dkt. 415 (8/28/2012). The feature is, however, required for the '399 Patent.

12. **Arguments That Infringement of the '135 Patent Requires That Serving of the Composite Page Cannot Be Started Until After Capturing Is Completed:** Defendants have argued that infringement of '135 Patent claim 8 requires that "capturing" be entirely completed before serving a composite webpage can begin. That is not an element of the claim under the Court's claim construction ruling. *See* DDR Opposition, Dkt. 417 (8/28/2012).

13. **Re: Capturing Element of '135 Patent claim 8, Arguments that the DDR Patent Specification Does Not Teach an Automated Process of Extracting Data from a Webpage or Does Not Provide a Detailed Description of How the Automated Capturing Process Works:** During claim construction, Defendants told this Court: "The specification also supports the automated nature of the [capturing] process by showing a flow chart of the process in Figure 6, and providing a detailed description of how the process works. See '135 Patent at 12:62-13:42. The entire nearly two-column long teaching describes an automatic process of extracting data." [Dkt. 281, at 22 (10/11/2011) (emphasis added)] Based on that argument, Defendants succeeded in having the term "capturing" interpreted as being limited to "automatic" processes. Defendants are judicially estopped from denying that the specification discloses an automated capturing process. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (judicial

estoppel exists where "a party's later position [is] clearly inconsistent with its earlier position," where "a court [was persuaded] to accept [the] earlier position," and the party "would derive an unfair advantage").

14. **References or Arguments in Contradiction to the Court's Order on Indefiniteness:** This Court previously rejected Defendants' arguments concerning alleged subjectivity or indefiniteness of the term "look and feel" of a website, as a matter of law. Dkt. 307 (11/17/2011) (holding Defendants' arguments were based on a mischaracterization of the case law on indefiniteness). Defendants ought not to be able to argue this defense to the jury.

15. **Prior Art Not Disclosed Under Patent Local Rules:** References cited in Defendants' § 282 Disclosures, served on August 31, 2012, but not cited in the invalidity contentions served under the Patent Local Rules (P.R. 3-6) before the deadline (February 6, 2012) should be excluded. FRE 402, 403. Defendants have not sought Court leave to supplement their invalidity contentions, nor is there any reason why they could not have included all materials in their February 6th contentions.

16. **Expert Opining on Invalidity Limited to His Report.** Despite submitting a 347-page expert report (Mr. Peter Kent) on invalidity (not counting attached charts and exhibits), Defendants' expert sought to "reserve the right to supplement my report and to rely on additional documents, prior art, or testimony which may come to my attention between the date of this report and the time of the trial in this case." [Kent ¶1336] Mr. Kent's testimony should be restricted to references and obviousness combinations.

17. **Expert Testimony by Lay Witnesses Without Summaries:** Under Fed. R. Civ. P. 26(a)(2), a party is required to submit a written report describing in detail expert testimony, for any expert witness that is "retained or specially employed" to provide an opinion, as well as

any employee of a party who regularly gives expert testimony as part of his or her regular duties. For all other expert witnesses, a party must disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Defendants have indicated that a number of lay witness-employees may testify as experts. Although the disclosure requirement under Fed. R. Civ. P. 26(a)(2)(C) is less extensive than the requirements for a written report of a hired expert (because, as the Advisory Committee said, "[c]ourts must … keep[] in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have"), the rule contains a disclosure requirement nonetheless, and the Advisory Committee explains that the purpose is to "enable parties to determine whether to take depositions of these witnesses, and to prepare to question them in deposition or at trial."

Defendants did not make any disclosure to DDR under Rule 26(a)(2) before the expert witness deadline (or afterwards either). Thus, lay employees of Defendants should be restricted to factual matters only and barred from expressing opinions as to the validity or applicability of any DDR patent claim. Specifically, such witnesses should not be permitted to opine on the ultimate questions of whether a reference (whether a printed publication or a "prior use") anticipates a DDR patent claim or renders a claim obvious, or that a certain system does or does not fall within the scope of a DDR patent claim, nor offer any other testimony under FRE 702.

18. **Testimony of Non-Party Fact Witness Regarding Matters of Law:** One witness, Mr. Levine (who ran the SexToy website alleged to be prior art), offered opinions that his firm (Convergent, Inc.) acted as an "outsource provider" and not just a "merchant," under this

Court's definitions in the claim construction order and that certain statements made by DDR to the Patent Office about "SexToy" were inaccurate, in his opinion.

Regarding his opinions about how his company fit under the Court's definitions, Mr. Levine was not disclosed as, or qualified as, an expert. Although he was shown the Court's definitions, he is not knowledgeable about what the Court's ruling means (nor did the *Court* instruct him), and admitted as much, and he agreed that he was not knowledgeable about the DDR patents and did not know the context in which those definitions were made.

Regarding his opinions about what DDR told the PTO, shamefully defense counsel did not advise Mr. Levine of the fact that the comments in DDR's reexamination papers concerned only "printed publications" regarding his system, not the SexToy system as it operated; thus, Mr. Levine's opinion that DDR's statements did not describe properly what his company did (in other words, his company's alleged "prior use") has no relevance.

In those circumstances, allowing entry of Mr. Levine's opinions would preempt the jury's role, unduly prejudice DDR, and allow introduction of expert testimony not disclosed to DDR (and thus, DDR did not have the ability to prepare to cross-examine Mr. Levine in rebuttal to expert matters when he was deposed). FRE 703; FRCP 26(a)(2).

Mr. Levine's testimony ought to be limited strictly to factual evidence of what the "SexToy" system did and what he published about the system.

**19.    Cumulative Numbers of Alleged Prior Art References (in Excess of Four Anticipation Arguments or Obviousness Combinations Per Asserted Patent Claim):** Defendants have changed the prior art on which they rely significantly and expanded their invalidity contentions throughout this case, including after their P.R. 3-6 disclosures. Not counting non-art invalidity contentions, for only 9 asserted DDR patent claims (5 independent

claims), Defendants' invalidity expert, Mr. Kent, proposed 6 different anticipation references and 17 different obviousness combinations, with the obviousness combinations including pairs of the 6 primary references and 4 other secondary references. Moreover, 4 of the 6 primary references are "prior use" systems, which rely not on a single document but rather a system, which require extensive testimony and varying quantities of supporting documents, in some cases tens of thousands of pages of materials.

Defendants have further signaled their desire to preserve a supposed right to use any of their scores of art references disclosed throughout the course of this case, including any combination thereof, at trial, not just what is in the invalidity expert report. And, one defendant NLG/WTH, just expressed its wish to add another set of invalidating references (not clearly defined), supported by thousands of documents, without use of an expert witness.

Defendants in effect propose a form of "trial by ambush," with DDR unable to properly prepare to face the references and combination Defendants actually decide to emphasize. Just as DDR has been limited to fewer claims than it could assert, so too should Defendants be limited to reasonable number of invalidity arguments.

DDR proposes that Defendants be limited to four anticipation arguments or obviousness combinations per claim. Similar orders have been entered in patent cases, including in this district, many times, as recently as earlier this week. *Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, Case No. 6:10-cv-00379-LED-JDL, Dkt. 1002 (E.D. Tex. Sept., 10, 2012) (limiting Defendant to "no more than 4 distinct bases for invalidity, including obviousness combinations"); *Wi-LAN, Inc.* v. *Acer, Inc.*, Case No. 2:07-cv-00473-TJW, Dkt. 596, at 4 (E.D. Tex. July 29, 2012) (limiting Defendants to 12 "anticipation or obvious charts total" for all claims asserted by Plaintiff); *Realtime Data, LLC* v. *Packeteer, Inc.*, Case No. 6:08-cv-

001440JDL, 2009 WL 4782062, *4 (limiting Defendant to no more than five obviousness combinations) ; *Hearing Components, Inc. v. Shure, Inc.*, No. 9:07-CV-104, 2008 WL 2485426, at *1 (E.D. Tex. June 13, 2008); *see also Rambus Inc. v. Hynix Semiconductor Inc.*, 2008 WL 4104116, at *6 (N.D. Cal. Aug. 27, 2008) ("It is hard for the court to imagine a legitimate basis for asserting more than two allegedly anticipating references and two or three obviousness combinations per claim.").

20. **Testimony About the Alleged Function or Use of Any System or Process Alleged to Be Prior Art That Is Not Corroborated By Documentary Evidence:** The Federal Circuit has repeatedly emphasized that mere oral testimony regarding items of prior art is disfavored, viewed as highly suspicious, and insufficient as a matter of law to invalidate a patent. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1366 (Fed. Cir. 1999) (extending corroboration requirement to all subsections of 35 U.S.C. § 102); *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 740 (citing *The Barbed Wire Patent*, 143 U.S. 275 (1892)). This Court has followed suit, of course. *Z4 Tech. v. Microsoft, Inc.*, 2006 WL 2401099 (E.D. Tex. 2006) ("The Federal Circuit has indicated that there is 'a clear requirement' that oral testimony by interested parties related to invalidity must be corroborated by documentary testimony"). Also, "the need for corroboration exists regardless of whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation or is uninterested but testifying on behalf of an interested party." *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1350 (Fed. Cir. 2003) (citing *Finnigan*, *supra*: "That corroboration is required in the former circumstance cannot be debated").

In this case, Defendants rely heavily (4 of 6 primary references in the expert report) on alleged prior uses, mostly by themselves or predecessors (3 of the 4 systems). There is a strong

risk that Defendants will ask questions of their witnesses seeking to elicit oral testimony concerning how these alleged prior uses operated or appeared, despite the absence of supporting documentation. Once the jury hears an allegation of that sort, it would be difficult to undo the damage, should the Court conclude that the allegation is unsupported by proper corroboration.

This motion, therefore, seeks to require Defendants to refrain from eliciting such naked testimony without advance proffer of documentary corroboration and Court's permission.

Respectfully submitted,

/s/Louis J. Hoffman
Louis J. Hoffman
AZ Bar #009722 *(Pro Hac Vice)*
LOUIS J. HOFFMAN, P.C.
14301 North 87th Street, Suite 312
Scottsdale, Arizona 85260
Telephone: 480.948.3295
Facsimile: 480.948.3387
Email: louis@valuablepatents.com

Ophelia F. Camiña
TX Bar No. 03681500
LeElle Krompass
TX Bar No. 24074549
SUSMAN GODFREY L.L.P.
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: 214.754.1900
Facsimile: 214.754.1933
Email: ocamina@susmangodfrey.com

Ian B. Crosby
WA Bar No. 28461 (Admitted, E.D. Tex.)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone: 206.516.3861
Facsimile: 206.516.3883
Email: icrosby@susmangodfrey.com

Michael C. Smith
TX Bar # 18650410
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
113 East Austin Street

                            Marshall, TX 75671
                            Telephone: 903.938.8900
                            Facsimile: 972.767-4620
                            Email: michaelsmith@siebman.com

                            ATTORNEYS FOR PLAINTIFF
                            DDR HOLDINGS, LLC

**CERTIFICATE OF SERVICE**

      I certify that this document was filed electronically pursuant to Local Rule CV-5(a) on the 13th day of September, 2012. Pursuant to Local Rule CV-5(a)(3)(A), this electronic filing acts to electronically serve all counsel who have consented to electronic service via the Court's CM/ECF system and in addition has been served electronically pursuant to the Electronic Service Agreement.

                            */s/ Donald Hertz*
                            NAME

**CERTIFICATE OF CONFERENCE**

      The undersigned hereby certifies that counsel for DDR have complied with the meet and confer requirement in Local Rule CV-7(h).  This motion is opposed.  The personal conference required by Local Rule CV-7(h) was conducted on September 12, 2012, via telephone conference with the following participants:

      Louis Hoffman and Michael Smith for DDR
      Jacob Maskovich and Glenn Thames for ICE/OVS
      Dustin Mauck for Digital River
      Carl Bruce for Expedia and Travelocity
      Jeff Snow for NLG/WTH

Although the parties reached agreement on many issues, no agreement could be reached on the matters stated above because the parties' representatives said that their respective clients could not agree to the relief requested.  Discussions have conclusively ended in an impasse, leaving open issues for the Court to resolve.

                            */s/ Louis J. Hoffman*
                            Louis J. Hoffman