UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **DDR HOLDINGS, LLC,** § | |
| *Plaintiff,* § | |
| § | |
| vs. § | **CASE NO. 2:06-CV-42-JRG** |
| § | |
| **HOTELS.COM, L.P., et al.,** § | |
| *Defendants.* § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Digital River, Inc.'s ("Digital River") Motion for Summary Judgment of Non-Infringement. (Dkt. No. 401.) After carefully considering the parties' written submissions, the Motion is **DENIED**.

### I.   BACKGROUND

On January 31, 2006, DDR Holdings, LLC ("DDR") brought this suit against various Defendants, including Digital River, alleging infringement of U.S. Patent Nos. 6,629,135 ("the '135 patent"), 6,993,572 ("the '572 patent") and 7,818,399 ("the '399 patent"), which relate to e-commerce outsourcing.[1]  Shortly after this suit was filed, in 2006, DDR filed a request for reexamination of the patents-in-suit, and the Court stayed the litigation pending the outcome of that reexamination. Ultimately, each of the asserted patents survived reexamination.

The basis for Digital River's Motion for Summary Judgment is its claim that DDR made statements to the USPTO during reexamination to avoid prior art which preclude the very infringement theories that DDR now asserts. (Dkt. No. 401.) Digital River contends that DDR persuaded the USPTO that the reexamined claims were allowable over the prior art because they

---

[1] Digital River is accused of infringing the '135 and '572 patents.

1

are specifically limited to a three-party system. (Dkt. No. 401, at 2.) Digital River contends that, despite making such statements, DDR now takes the position that Digital River's two-party system infringes the asserted claims. *Id*. DDR responds that Digital River is simply mischaracterizing the statements made during the reexamination, and that the agreed-upon construction of the claims demonstrates that Digital River's two-party system is capable of infringing the '135 and '572 patents.

The independent claims asserted against Digital River are as follows:

> An e-commerce outsourcing process providing a host website in communication with a visitor computer with context sensitive, transparent e-commerce support pages, comprising the steps of:
> a) capturing a look and feel description associated with a host website;
> b) providing the host website with a link for inclusion within a page on the host website for serving to a visitor computer, wherein the provided link correlates the host website with a selected commerce object; and
> c) upon receiving an activation of the provided link from the visitor computer, serving to the visitor computer an e-commerce supported page with a look and feel corresponding to the captured look and feel description of the host website associated with the provided link and with content based on the commerce object associated with the provided link.

*See* '135 Patent, Claim 8.

> An e-commerce outsourcing system comprising:
> a) a data store including a look and feel description associated with a host web page having a link correlated with a commerce object; and
> b) a computer processor coupled to the data store and in communication through the Internet with the host web page and programmed, upon receiving an indication that the link has been activated by a visitor computer in Internet communication with the host web page, to serve a composite web page to the visitor computer with a look and feel based on the look and feel

> description in the data store and with content based on the commerce object associated with the link.

See '572 Patent, Claim 13.

> An e-commerce outsourcing process comprising the steps of:
> a) storing a look and feel description associated with a first website in a data store associated with a second website;
> b) including within a web page of the first website, which web page has a look and feel substantially corresponding to the stored look and feel description, a link correlating the web page with a commerce object; and
> c) upon receiving an activation of the link from a visitor computer to which the web page has been served, serving the visitor computer from the second website a composite of the first website and having content based on the commerce object associated with the link..

See '572 Patent, Claim 17.

In the Claim Construction Order (Dkt. No. 309, at 10-11), the Court established the following definitions:

| Term | Construction |
|---|---|
| First web page | Host web page |
| First web site | Host website |
| Commerce Object | A third-party merchant's: catalog, category, product (goods or services), or dynamic selection |
| Merchant | Producer, distributor, or reseller of goods or services to be sold |
| Host/owner | An operator of a website that engages in Internet commerce by incorporating one or more links to an e-commerce outsource provider into its web content |
| Outsource provider / e-commerce outsource provider | A party, independent from the host associated with the commerce object or merchant of the commerce object, that provides e-commerce support services between merchant(s) and host(s) |

Among these constructions, Digital River places particular emphasis on the construction of the term "commerce object," which the parties agreed to mean "a ***third-party*** merchant's: catalog, category, product (goods or services), or dynamic selection." (Dkt. No. 309, at 10) (emphasis

3

added.) Digital River contends that the addition of **third-party** to the definition of "commerce object" was necessitated due to arguments DDR made before the USPTO during reexamination, and that such construction means that it takes a three-party (not a two-party) system to infringe the asserted claims. (Dkt. No. 401, at 6.) DDR responds that the term "third-party" does not mean that infringement requires three separate parties, but rather that one element of the system (the outsource provider) be a "third-party" (*e.g.,* independent from) other actors within the system (the host and the merchant). (Dkt. No. 415, at 8.) DDR also points to a clear statement in the common specification of the '135 Patent which provides: "[t]hese parties include Merchants, Hosts, and the e-commerce outsource provider. This folds into two parties where one party plays the dual role of Host and Merchant." '135 Patent, col. 21, lines 44-48.

## II. Applicable Law

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Summary judgment is proper when there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a

material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III. DISCUSSION

#### A. *Parties' Contentions*

The written description of the patents-in-suit, which issued from a common specification, recites that "[t]here are three main parties in the outsourced e-commerce relationship, excluding the end consumer … [the] Merchants, Hosts, and the e-commerce outsource provider." *See* '135 Patent, col. 21, lines 44-46. The crux of the dispute before the Court involves the inter-relationship among these parties. Digital River contends that the merchant, host and e-commerce outsource provider must be distinct and independent entities that are each "third-parties" relative to one another, which justifies Digital River's arguments that infringement requires a "three-party system." (Dkt. No. 401.) DDR responds that the crucial inquiry is not the number of "parties" to the system, but rather whether the outsource provider is a "third-party" to both the merchant and the host. (Dkt. No. 415.) According to DDR's infringement theory, the relationship between the host and the merchant is not relevant to this analysis. *Id*. The parties have therefore raised a "fundamental dispute regarding the scope of a claim term," which the Court has a duty to resolve as a matter of law. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362-62 (Fed. Cir. 2008).

Digital River's basis for its "three-party system" limitation is primarily based on alleged prosecution history estoppel generated during the reexamination of the patents-in-suit before the USPTO. (Dkt. No. 401.) Specifically, Digital River points to statements made by DDR to distinguish the claims of the patents-in-suit from U.S. Patent No. 6,016,504 ("Arnold"), which

then served as the basis for the Patent Examiner's anticipation rejection of the claims. (Dkt. No. 401, at 4.) DDR statements relied upon by Digital River include:

- "The Arnold patent lacks one of the three parties to the subject patent." *See* '572 Patent Response to Office Action of Nov. 24, 2008, at 4-5.

- "The distinctions are crucial, in the context of the patent being reexamined, because the patent states, 'There are three main parties in the outsourced e-commerce relationship, excluding the end consumer. These parties include Merchants, Hosts, and the e-commerce outsource provider.'" '572 Patent Appeal Brief of May 18, 2009, at 19.

- "Arnold's link from the host website to the merchant directly does not correlate/correspond with a commerce object (as claims 1, 13, and 17 each require), because the term "commerce object" in the patent in question, is defined as a product of a third-party merchant, not a product sold by the owner of the linked page." '135 Patent Appeal Brief of May 9, 2009, at 14.

- "It just uses the same term, 'commerce object,' and from which, you know, it is clear that the merchant is a third party…." Record of Oral Hearing of Oct. 21, 2009, at 10.

- "I think it is clear that if you read through the specification in its [] entirety and including the parts I cited in the Bbrief [sic], you will see that the sense of the – you will see that through the specification, in using the term 'commerce object' is referring to a commerce object of a third-party merchant and that's the way the specification is written." *Id.*, at 11.

- "It is the – whole concept of the entirety of the lengthy specification is dealing with this notion of an outsource provider intervening between, as an intermediary party, between a host and a merchant." *Id.*, at 12.

Digital River argues that the reexamination record "leaves no doubt that the two-party systems were repeatedly disclaimed by DDR." (Dkt. No. 401, at 6.)

DDR responds that the clear and unambiguous language of the written description clearly and unambiguously contemplates a "two-party" system like Digital River's:

> There are three main parties in the outsourced e-commerce relationship, excluding the end consumer. These parties include Merchants, Hosts, and the e-commerce outsource provider. ***This folds into two parties where one party plays the dual role of Host and Merchant***.

*See* '135 Patent, col. 21, ll. 44-48 (emphasis added). According to DDR, this portion of the specification demonstrates that a two-party system could infringe the asserted patents where one party controls the outsource provider and the other serves the dual role of host and merchant. (Dkt. No. 415, at 8-9.) With regard to the prosecution estoppel arguments, DDR argues that all of its statements with regard to "third-parties" was an attempt to distinguish the fact that Arnold lacked the independent *outsource provider* contemplated by the claims of the asserted patents. *Id.*, at 10. DDR contends that the entire dispute before the patent office regarded whether or not the claims implicitly required an outsource provider (that acted for a Merchant), as opposed to only a Merchant that acted for itself. *Id*.

Digital River replies that the parties' agreed construction of "outsource provider" is "[a] party … that provides e-commerce support services ***between*** merchant(s) and host(s)." (Dkt. No. 309, at 11.) Therefore, in a situation where the merchant (*e.g.,* Microsoft) and host (*e.g.,* Microsoft) are the same, Digital River must "provide e-commerce support services ***between***" Microsoft and Microsoft, which, according to Digital River, "makes no sense." (Dkt. No. 442, at 2.)

However, in sur-reply, DDR argues that there is "nothing 'nonsensical' about Digital River acting as an Outsource Provider 'provid[ing] e-commerce support services between' Microsoft acting as a Merchant (a seller of software) and Microsoft acting as a Host (Microsoft has hundreds of thousands of web pages, some of which allow users to click through to Digital River to buy software.)" (Dkt. No. 465, at 4.) DDR notes that the asserted patents explicitly recognize that an Outsource Provider can provide an intermediary service in such a situation ('135 Patent, col. 21, lines 46-47), the value of which "is evidenced by the fact that Microsoft pays Digital River to provide that precise service." *Id.*

7

### B. Analysis

After carefully considering the parties written submissions and analyzing the complete reexamination file, the Court finds that DDR's statements distinguishing Arnold on the basis of a "third-party" were directed to the overriding concept that an "outsource provider" must be independent from both the Merchant and the Host, *i.e.,* a "third-party." While the isolated statements made by DDR before the USPTO initially appear to support Digital River's arguments for prosecution history estoppel, Digital River's arguments lose much of their persuasive force when read within the full context of the reexamination file. Within the context of the entire dialogue between DDR and the USPTO, it becomes apparent that DDR did not limit the claims to require three separate parties or entities, but rather DDR laid out a different premise to overcome Arnold, *i.e.:* that the outsource provider must be independent from the host and merchant – nothing more. This was DDR's key distinction over Arnold. Notably, Arnold did not contain an independent e-commerce outsource provider and that ultimately lead to the allowance of the claims. DDR's arguments were solely directed to the concept of demonstrating this distinction.[2]

When viewed as a whole, the reexamination file shows that there is no clear and unambiguous disavowal of claim scope that would preclude the two-party embodiment expressly disclosed in the specification. *See* '135 Patent, col. 21, ll. 44-48 ("This folds into two parties where one party plays the dual role of Host and Merchant."). Without a review of the full reexamination file, it is arguably plausible that Digital River's position is correct. However, employing the same exegesis used by scholars to understand everything from Shakespeare to the

---

[2] *See, e.g.,* Record of Oral Hearing of October 21, 2009, at 9 ("I mean we are advocating for the commerce object being the product of a merchant, meaning a third-party merchant. If you don't do that and you say the commerce object can be the outsource provider's own product, then, which is, in effect, what the Examiner has said, then it would make no sense to add a dependent element that says 'further providing billing information or contracting with the merchant,' because there would – it wouldn't be consistent with the use of the same term.'").

bible, the Court reaffirms that *context matters*. Reading the full reexamination file as opposed to the isolated statements cited by Digital River takes this reader to a different conclusion altogether. This Court's conclusion is that so long as the e-commerce outsource provider is independent from the host and merchant, the claims can be infringed. *See Schwing Gmbh v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324 (Fed. Cir. 2002) ("[a]lthough prosecution history can be a useful tool for interpreting claim terms, it cannot be used to limit the scope of a claim unless the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter.").

Further, the Court does not identify any inconsistency with regard to the argument that the outsource provider must provide e-commerce services "between" the host and the merchant in instances where the host and merchant are controlled by the same entity. As DDR notes, the patent specifically contemplates such a configuration (*see* '135 Patent, col. 21, lines 46-47) and, practically speaking, such an arrangement could occur whenever an entity sells products on a website that it also hosts.

For the reasons described above, the Court identifies no clear disavowal of claim scope in the reexamination history that would preclude a finding of infringement simply because one party plays the dual role of host and merchant. The Court therefore expressly **REJECTS** Digital River's argument, as a matter of claim construction, that the claims of the asserted patents cannot be infringed by a "two-party" system where one party is the e-commerce outsource provider and another party serves the dual roles of host and merchant.

## IV.    CONCLUSION

Having carefully considered the parties' written submissions, the Court finds that Digital River presents a question of law as to claim construction, but that its asserted construction is in

error and does not support granting summary judgment in its favor. Accordingly, Digital River's Motion for Summary Judgment of Non-Infringement is **DENIED**, and the Court finds as a matter of law that infringement is possible where the e-commerce outsource provider is independent from the host and merchant, regardless of whether the host and merchant are controlled by the same entity or separate entities.

**So ORDERED and SIGNED this 3rd day of October, 2012.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE