**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **DDR HOLDINGS, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:06-cv-42-JRG |
| | § | |
| **DIGITAL RIVER, INC., NATIONAL** | § | |
| **LEISURE GROUP, INC. and WORLD** | § | |
| **TRAVEL HOLDINGS, INC.** | § | |
| *Defendants.* | § | |

## FINAL JURY INSTRUCTIONS

Ladies and Gentlemen of the Jury:

You have now heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. However, you the jury, are the sole judges of the facts. Accordingly, do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I give you these instructions, the attorneys will make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it and sign it. Answer each question in the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all

1

exhibits received into evidence, regardless of who may have produced them. You may also consider any stipulations received into evidence.

By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence. As stated before, you are the sole judges of the credibility of all the witnesses and the weight and effect, if any, to be given to all of the evidence.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was said during such discussions out of your presence.

Certain testimony in this case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify in person, the witness's testimony may be presented, under oath, through a deposition previously recorded and transcribed. Sometime before this trial, attorneys representing both of the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony.  This deposition testimony is entitled to the same consideration as testimony given by a witness in person and from the witness stand. That is to say, you should judge the credibility of and weigh the importance of deposition testimony, to the best of your ability, as if the witness had testified in open court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of your common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

Unless instructed otherwise, you may find that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence - such as testimony of an eyewitness. The other is indirect or circumstantial evidence - the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts based on all the evidence, both direct and circumstantial.

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits are sometimes called "jury aides."  Demonstrative exhibits are not evidence.

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field - called an "expert witness" – is permitted to state his or her opinions on those technical matters. However, you are not required to accept those opinions. As with any other witness, it is up to you to decide whether or not to rely upon them.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he or she testifies regularly as an expert witness and that income from such testimony represents a significant portion of the expert's income.

Before the evidence in this case began, I gave you some preliminary instructions. In those instructions, I explained that there are two standards of proof that you will apply in this case – the first is the "preponderance of the evidence" standard and the second is the "clear and convincing" standard.

Preponderance of the evidence means evidence that persuades you that a claim is more likely true than not true.

Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue.

As issued United States patents, the patents-in-suit are presumed to be valid.   The Defendants have the burden of overcoming that presumption and proving invalidity of the '572 Patent by clear and convincing evidence.

The parties have agreed, or stipulated to, the following facts. This means that both sides agree that these are facts. You must therefore treat these facts as having been proven.

1.  The patents in suit are U.S. Patent 6,993,572, issued January 31, 2006, and U.S. Patent 7,818,399, issued October 19, 2010 (the "patents-in-suit").

2.  The asserted claims of the patents in suit for the October 2012 trial are claims 13, 17 and 20 of the '572 patent; and claims 1,3 and 19 of the '399 patent.  The asserted claims from the

'572 Patent are asserted against both defendants.  The '399 Patent claims are asserted only against Defendants National Leisure Group, Inc. & World Travel Holdings.

3.  Plaintiff DDR owns all right, title, and interest in the patents-in-suit, including the right to sue for any patent infringement.

4.  With respect to the case before the Court, the parties agree that the Court has personal jurisdiction over the parties, that subject matter jurisdiction is proper in this Court, and that venue is proper in this Court.

5.  Each of the DDR patents-in-suit names the inventors as D. Delano Ross, Jr., Daniel D. Ross, Joseph R. Michaels, William R. May, and Richard A. Anderson.

6.  DDR's claim of willful infringement of the '572 Patent does not include the period of reexamination prior to April 23, 2010, the date of issuance of the Notice of Intent to Issue Reexamination Certificate.

As I did at the start of the case, I will now give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to prevail on each of its contentions.

DDR contends that certain claims of the following patents have been infringed:

- U.S. Patent No. 6,993,572 (referred to here as the '572 Patent);
- U.S. Patent No. 7,818,399 (referred to here as the '399 Patent).

These patents have been referred to, as a group, as the "patents-in-suit."  DDR does not contend that each Defendant infringed each of the patents-in-suit.  Rather, it contends that each Defendant infringed only certain claims of certain of the patents-in-suit.  The claims that DDR contends have been infringed have been referred to as the "Asserted Claims."

In general, DDR contends that the Defendants have directly infringed the Asserted Claims by making, selling, or using their e-commerce methods or systems.  I may refer to Defendants'

accused systems or methods as "the accused e-commerce websites."  DDR also contends that the Defendants are inducing infringement of Claim 17 of the '572 Patent by inducing others to perform one step of that patented method, while a Defendant performs the other steps.  Finally, DDR alleges that Defendants have willfully infringed the patents-in-suit.

The Defendants deny that they are infringing any of the Asserted Claims of the patents-in-suit.  The Defendants also deny that they have willfully infringed the patents-in-suit. The Defendants further deny that DDR is entitled to any damages.

Furthermore, Defendants contend that the Asserted Claims of the '572 Patent are invalid on one or more grounds.  Invalidity is a defense to infringement.  Therefore, even though the U.S. Patent and Trademark Office (or PTO) has allowed the Asserted Claims, you the jury must decide whether those claims are invalid.

Your job is to decide whether the Asserted Claims have been infringed, and whether the Asserted Claims are invalid.  Infringement and invalidity are separate questions and should be considered and answered separately.  If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide what amount of money damages, if any, are to be awarded to DDR as compensation for such infringement.  I will take willfulness into account later.

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims themselves that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the

invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers collectively depends on what each of its claims covers.

Claims may describe methods, products, such as machines or chemical compounds, or processes for making or using a product.  In this case, DDR has asserted system and method claims.

Claims are usually divided into parts or steps, called "limitations" or "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop.  In this example, the tabletop, legs, and glue are each separate limitations of the claim.

In deciding whether or not an accused system or method infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

The law says that it is my role to define the terms of the claims, and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims, and I have provided to you my definitions of certain claim terms.  These are in your juror notebooks.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity.

The claim language I have not interpreted for you is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art, which is to say, in the field of technology

of the patent.  The meaning of the words of the patents claims must be the same when deciding both infringement and validity.

You have been provided with copies of the patents-in-suit and copies of the claim term definitions in your juror notebooks, and you may use them in your deliberations.  Rather than take the time to read each definition out loud at this time, I'll again point you to the claim term definitions in your juror notebooks.  Also, you are each being provided with a hard copy of these instructions, which also contain a list of my claim term definitions.  You may refer to these during your deliberations.

[CLAIM TERM DEFINITIONS NOT READ OUT LOUD]

1. The term "look and feel" means "a set of elements related to visual appearance and user interface conveying an overall appearance identifying a website; such elements include logos, colors, page layout, navigation systems, frames, "mouse-over" effects, or others [sic] elements consistent through some or all of the website."

2. The term "visually perceptible elements" means "look and feel elements that can be seen."

3. The term "web page" means "a document that is accessible through the World Wide Web and capable of being displayed by a web browser."

4. The term "first web page" means "host web page."

5. The term "website" means "one or more related web pages at a location on the World Wide Web."

6. The term "first website" means "host website."

7. The term "commerce object" means "a third-party merchant's: catalog, category, product (goods or services), or dynamic selection."

8. The term "merchant" means "producer, distributor, or reseller of goods or services to be sold."

9. The term "host/owner" means "an operator of a website that engages in Internet commerce by incorporating one or more links to an e-commerce outsource provider into its web content."

10. The term "outsource provider/e-commerce outsource provider" means "a party, independent from the host associated with the commerce object or merchant of the commerce object, that provides e-commerce support services between merchant(s) and host(s)."

11. The term "link" means "a hypertext, text, banner, logo, graphic, or other element that permits a user to navigate from one web location to another web location by activating that element."

12. The term "look and feel description" means "data defining look and feel."

13. The term "capturing" means "automatically, by a party other than the host, retrieving elements from the host website."

14. The term "third parties" means "separate legal entities under separate control."

[RESUME READING]

In addition to the claim definitions listed in your notebooks, the court has ruled, as part of the claim construction, that the '399 patent required three parties that are wholly separate entities, but the '572 patent does not have that same requirement. Instead, a party may infringe the '572 patent with a "two-party" system where one party is the outsource provider and another party serves the dual roles of host and merchant.

The beginning, or preamble, of certain claims uses the word "comprising."  "Comprising" means "including" or "containing but not limited to."  For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

If you decide that the Defendants' accused e-commerce websites include all the requirements or steps in an Asserted Claim, the claim is infringed.  This is true even if the accused website includes components or steps in addition to those requirements.

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  It is not necessary to look at any other claim to determine what an independent claim covers.

In this case, Claims 13 and 17 of the '572 Patent, and Claims 1 and 19 of the '399 Patent are independent claims.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the limitations of the other claim to which it refers, as well as the additional limitations recited in the dependent claim itself.  In this way, the claim "depends" on another claim. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim or claims to which it refers.  Claim 20 of the '572 and claim 3 of the '399 Patent are dependent claims.

In order to find infringement of a dependent claim, you must first determine whether the independent claim to which it refers has been infringed.  Thus, you must consider all limitations of both the dependent claim and independent claim from which it depends.  If you decide that the independent claim has not been infringed, then the dependent claim cannot have been infringed.  If you decide that the independent claim has been infringed, you must then separately determine whether each additional requirement of the dependent claim has also been included in the accused e-commerce website.  If each additional requirement has been included, then the dependent claim has been infringed.

For example, claim 20 of the '572 Patent is a dependent claim of independent claim 17. Because dependent claim 20 includes all of the limitations of claim 17, if claim 17 is not infringed, then claim 20 cannot be infringed either.

I will now instruct you as to the rules you must follow when deciding whether DDR has proven by a preponderance of the evidence that any Defendant has infringed any of the Asserted Claims of the patents-in-suit.  Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another claim.

To decide infringement, you must compare each of the Asserted Claims, as I have defined them, to each of the Defendants' accused e-commerce websites to determine whether every requirement or element of the Asserted Claim is included in the accused website.  You must not compare the accused e-commerce website to any specific example set out in the patents.  The only correct comparison is with the language of the Asserted Claims themselves, with the meanings I have given you.

To prove infringement, DDR must prove that the Defendants' accused websites include every requirement or element of the Asserted Claims.  If the accused website omits any requirement recited in the Asserted Claims, it does not infringe that claim.

In this case, there are two possible ways that a claim may be infringed: (1) direct infringement; and (2) active inducement.   DDR has alleged that the Defendants directly infringe the Asserted Claims.  In addition, as it concerns Claim 17 of the '572 Patent, DDR has alleged that Defendants are liable for actively inducing infringement by inducing others to perform one step of Claim 17 of the '572 Patent while Defendants perform the remaining steps of that Claim.

I will now explain each of the types of infringement in more detail.

In order to prove direct infringement, DDR must prove by a preponderance of the evidence that the Defendants' accused ecommerce websites each meet all of the requirements of each Asserted Claim. You must compare each accused website with each and every one of the requirements of the Asserted Claims to determine whether all of the requirements of that claim are met. If you find that the accused website includes each element of the claim, then that website directly infringes the claim even if such website contains additional elements that are not recited in the claim.  A claim requirement is present if it exists in an accused system or its method of use is as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by one of skill in the art. If any of the accused products or services omit any requirement recited in a claim, then a particular system or method does not literally infringe that particular claim.

If a Defendant does not itself satisfy every requirement in the patent claim through its own equipment or actions, that Defendant cannot be liable for direct infringement merely because other parties added missing elements, unless that Defendant directed or controlled those parties so as to obligate them to provide the missing elements in an infringing manner.  A Defendant does not direct or control someone else's equipment or actions merely because the Defendant entered into a relationship with that person.  Mere arms-length cooperation is not enough.  Instead, the Defendant

12

must specifically obligate the other person to perform the missing acts or to supply the missing technology in an infringing manner, so that every step is attributable to the Defendant as the controlling party.

You must determine, separately for each Asserted Claim, whether or not there is infringement. There is one exception to this rule. If you find that an independent claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers to that independent claim. On the other hand, if you find that an independent claim has been infringed, you still must decide, separately, whether the dependent claim meets the additional requirements that depend from that independent claim. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim. A patent may also be directly infringed even though the accused infringer believes in good faith that what it is doing is not an infringement of the patent. Infringement does not require that a party copied a website.

DDR alleges that the Defendants are also liable for infringement by actively inducing the infringing acts of their customers.  DDR alleges induced infringement only as to Claim 17 of the '572 Patent.  As with direct infringement, you must determine whether there has been active inducement separately for each Defendant.

A person is liable for inducing infringement of a claimed method of a patent only if there is infringement of the claim and:

    (1)  the person takes action during the time the patent is in force which encourages acts by someone else;

    (2)  the encouraged acts constitute performance of one or more steps of that claim;

(3)  the person has an intent to cause the encouraged acts;

(4)  the encouraged acts are actually carried out by someone else;

(5)  the person is aware of the patent; and

(6)  the person either:

> (a)  actually knows the encouraged acts constitute infringement of that claim; or

> (b)  believes there is a high probability that the acts, if taken, would constitute infringement of the claim but deliberately avoided confirming that belief.

In order to prove active inducement, DDR must prove that each of the above requirements is met.  Further, proof of each element must be established by a preponderance of the evidence, i.e., that is it more likely than not that each of the above requirements has been met.

To establish active inducement of infringement, it is not sufficient that the accused infringer was aware of the acts that allegedly induced another's infringing acts.  Rather, you must find specifically that the inducer intended to cause another to engage in infringing acts and knew that its actions would cause direct infringement or subjectively believed there was a high probability that the encouraged acts infringed claims of the patent and took deliberate actions to avoid learning that fact.

If you do not find that the accused infringer specifically meets these intent requirements, then you must find that it has not actively induced the alleged infringement.

In this case, DDR alleges that the Digital River willfully infringed the Asserted Claims of the '572 Patent and that NLG/WTH willfully infringes the asserted claims of the '572 and the '399 Patents.  If you have decided that Defendants have infringed a valid claim of the '572 or the '399 Patents, you must address the additional issue of whether or not this infringement was willful.  The issue of willful infringement must be addressed separately for each Defendant.

The issue of willful infringement relates to the amount of damages DDR is entitled to recover in this lawsuit.   If it is decided that a Defendant willfully infringed the claims of the patents-in-suit, then it is my job to decide whether or not to award increased damages to DDR.   You should not take this factor into account in assessing the damages, if any, to be awarded to DDR.

Willfulness requires you to determine by clear and convincing evidence that a Defendant acted recklessly. To prove that a Defendant acted recklessly, DDR must prove by clear and convincing evidence that the Defendant actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.   To determine whether a Defendant had this state of mind, consider all the facts which may include, but are not limited, to:

(1) Whether or not a Defendant acted in accordance with the standards of commerce for its industry;

(2) Whether or not a Defendant intentionally copied a product of the patent holder that is covered by the patents-in-suit;

(3) Whether or not there is a reasonable basis to believe that a Defendant did not infringe or had a reasonable defense to infringement;

(4) Whether or not a Defendant made a good-faith effort to avoid infringing the patents-in-suit, for example, whether a Defendant attempted to design around the patents-in-suit; and

(5) Whether or not a Defendant tried to cover up its infringement.

None of these factors are determinative, and this list of factors is not an exhaustive list of things you should consider.   Your determination should incorporate the totality of the circumstances based on the evidence presented throughout the trial.

I will now instruct you on the rules you must follow in deciding whether or not the Defendants have proven that the asserted claims of the patents in suit are invalid.  An issued patent is accorded a presumption of validity based on the presumption that the United States Patent Office acted correctly in issuing the patent.  To prove that any claim of a patent is invalid, the Defendants must persuade you by clear and convincing evidence, that the claim is invalid.  Even if the Defendants present items that were not before the Patent Office, the presumption of validity of the patent remains intact and the clear and convincing standard does not change.

Defendants have challenged the validity of the Asserted Claims of the '572 Patent but not the '399 Patent.  Patent invalidity is a defense to patent infringement.  Even though the Patent Office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

You have heard evidence of prior art that the Patent Office may not have evaluated before granting the '572 Patent.  You must consider whether that evidence is materially new, and if so, consider that fact when determining whether an invalidity defense has been proven by clear and convincing evidence.  Prior art differing from the prior art considered by the Patent Office may, but does not always, carry more weight than the prior art that was considered by the Patent Office.  Again, the ultimate responsibility for deciding whether the claims of the patent are valid is up to you, the members of the jury.

Validity is determined on a claim-by-claim basis.  If one claim of a patent is invalid, this does not mean any other claim is necessarily invalid.  Claims are construed the same way for determining infringement as for determining invalidity.

The Defendants have challenged the validity of the Asserted Claims on a number of grounds. I will now explain to you the Defendants' grounds for asserting invalidity of the Asserted Claims. In making your determination as to invalidity, you should consider each claim separately.

A patent claim is invalid if the claimed invention is not new.  For a claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, such previous device, method, publication or patent is called a "prior art reference."  If a patent claim is not new we say it is "anticipated" by a prior art reference.  The Defendants must prove with clear and convincing evidence that a claim was anticipated.

In determining whether or not the invention is valid, you must determine the scope and content of the prior art at the time the invention was made.  You must decide whether the specific references relied upon by the Defendants in this case are prior art to the invention described in the Asserted Claims of the patents-in-suit.

Prior art includes previous devices, articles and methods that were publicly used or offered for sale, and printed publications or patents that disclose the invention or elements of the invention. Once you decide whether or not specific references are prior art, you must also decide what those references would have disclosed or taught to one having ordinary skill in the field of technology of the patent at the time the invention was made.

For prior art to anticipate a claim of a patent, the disclosure in the prior art reference does not have to be in the same words as the claim, but all of the elements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of software and website design looking at that one reference would be able to make and use at least one embodiment of the

claimed invention.  Anticipation also occurs when the claimed invention inherently (necessarily) results from practice of what is disclosed in the written reference, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of the invention.

Here is a list of ways that Defendants can show that the patents-in-suit were not new:

1.      If the claimed invention was already publicly known or publicly used by others in the United States before the date of invention;

2.      If the claimed invention was already described in a printed publication, anywhere in the world, more than a year before the effective filing date of the patent claims.  The effective filing date of the independent asserted claims is September 17, 1998, the date of the provisional application.  The effective filing date of the dependent asserted claims is September 17, 1999, the date of the regular application.

3.      If the claimed invention was already described in a printed publication, anywhere in the world before the date of the invention.  To qualify as a prior art reference, a "printed publication" must be reasonably accessible to those interested in the field, even if it is difficult to find.  An electronic publication, including an on-line or internet publication is a "printed publication" if it is reasonably accessible to those interested in the field, even if it is difficult to find;

4.      If the claimed invention was made in this country by another before the inventors of the patents-in-suit made the claimed invention, and the other person has not subsequently abandoned, suppressed, or concealed their prior invention; or

5.      If the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before the effective date for a patent claim.  The date of invention for the patent claims is irrelevant to this category of prior art.  If the sale or offer for sale is more than

one year before the effective filing date, then the product or method is prior art, regardless of the date of the invention.  An invention was publicly used when it was either accessible to the public or commercially available.  An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, that is, it was actually built, or the inventor had prepared drawings or other a descriptions of the claimed invention that were sufficiently detailed to enable one having ordinary skill in the field of the invention to make and used the claimed invention, even if it was not yet reduced to practice.

If a patent claim is not new as explained above, you should find that claim invalid.

You have heard me refer to what is called the "date of invention."  Since priority of invention is in dispute in this case, you must determine a date of conception and reduction to practice for the claimed invention and whether the named inventors were reasonably diligent in reducing the invention to practice.  Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is to be applied in practice.  Reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose.  Reasonable diligence means that the inventor worked continuously on reducing the invention to practice.  Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of reasonable diligence.

In order to prove prior invention in this case, Digital River is required to present additional evidence beyond the testimony of the prior inventors.  However, you must evaluate all pertinent evidence, including that testimony, and make a sound determination that the evidence credibly establishes prior invention.

Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention at the time the patent application was filed.

The Defendants may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention, as a whole, would have been obvious to persons having ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of technology of the patent, that someone would have had, at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on the building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of technology of the patent to combine the known elements in a way the claimed invention does, taking into account such factors as:

(1)     Whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

(2)     Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3)     Whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4)    Whether the prior art teaches away from combining elements in the claimed invention;

(5)    Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

(6)    Whether the change resulted more from design incentives or other market forces.

To find that prior art rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success.

In determining whether the claimed invention was obvious, do not use hindsight.  In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teaching of the patents-in-suit.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1.   You must decide the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

2.   You must decide the scope and content of the prior art.  In determining the scope and content of the prior art, you must decide whether a reference is pertinent, or analogous, to the claimed invention.   Pertinent, or analogous, prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned.  Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

21

3.   You must decide what difference, if any, existed between the claimed invention and the prior art.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention that may shed light on the obviousness or not of the claimed invention, such as:

(1)     Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

(2)     Whether the invention satisfied a long-felt need;

(3)     Whether others had tried and failed to make the invention;

(4)     Whether others invented the invention at roughly the same time;

(5)     Whether others copied the invention;

(6)     Whether there were changes or related technologies or market needs contemporaneous with the invention;

(7)     Whether the invention achieved unexpected results;

(8)     Whether others in the field praised the invention;

(9)     Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(10)    Whether others sought or obtained rights to the patent from the patent holder; and

(11)    Whether the inventor proceeded contrary to accepted wisdom in the field.

Corroboration is required of any witness whose testimony is asserted to prove prior invention or invalidate a patent, regardless of his or her level of interest.

Oral testimony alone is insufficient to prove prior invention or that something is prior art.  A party seeking to prove prior invention or prior art also must provide evidence that corroborates any oral testimony, especially where the oral testimony comes from an interested witness, or a witness

testifying on behalf of an interested party.  Interested witnesses are those who are a named party, an employee or assignor to a named party, or otherwise in a position where he or she stands to directly and substantially gain by his or her invention being found to have priority over the patent claims at issue.  This includes any individual or company testifying that his invention or its invention predates the patents-in-suit.   Documentary or physical evidence that is made contemporaneously with the inventive process by someone other than the alleged prior inventor provides the most reliable proof that the alleged prior art inventor's testimony has been corroborated.  For any oral testimony that a party has put forth alleging that a particular event or reference occurred before the effective filing date of the patents-in-suit, that party must also have provided corroborating evidence that agrees with that oral testimony.  If you find the party has not corroborated the oral testimony with other evidence you are not permitted to find that the subject of that oral testimony qualifies as prior art or supports a prior date of invention.

If evidence is presented for purposes of attempting to corroborate oral testimony, then you must determine whether this evidence does, in fact, properly corroborate the oral testimony.  In making this determination, you should consider the following factors:

1.    The relationship between the corroborating witness and the alleged prior user;

2.    The time period between the event and this trial;

3.    The interest of the corroborating witness in the subject matter of his suit;

4.    Contradiction or impeachment of the witness's testimony;

5.    Extent and detail of the corroborating witness's testimony;

6.    The witness's familiarity with the subject matter of the patented invention and the alleged prior use;

7.    Probability that a prior use could occur considering the state of the art at the time; and

8.    Impact of the invention on the industry, and the commercial value of its practice.

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention.  The parties agree that the level of ordinary skill in the field of the invention would be an individual who, as of the relevant point in time, has either: (1) a master's degree in computer science, electrical or computer engineering, or a related field; (2) a bachelor's degree in computer science, electrical or computer engineering, or a related field, and two years of experience developing web-based systems; or (3) an equivalent amount of relevant work or research experience.

If you find that the Defendants infringed any valid claim of the patents in suit, you must then consider what amount of damages to award to DDR.  You must make this determination separately for each accused e-commerce website of each Defendant.  I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate DDR for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put DDR in approximately the same financial position that it would have been in had the infringement not occurred.

DDR has the burden to establish the amount of its damages by a preponderance of the evidence. Damages should be given to DDR only for websites or methods of sales that infringe the patents-in-suit, and not for non-infringing websites or methods of sales.  That is, if DDR proves by a preponderance of the evidence that one of Defendant's websites or methods of sales infringes one of the patents-in-suit, you should award damages to DDR for that patent for the time period of infringement.  However, if one of Defendant's websites or methods of sales does not infringe any

of the patents-in-suit, no damages should be given to DDR for infringement by those non-infringing websites or methods of sales.

In other words, you should award only those damages that DDR establishes that it more likely than not has suffered. While the patent owner is not required to prove damages with mathematical precision, it must prove them with reasonable certainty.  DDR is not, however, entitled to damages that are remote or speculative.

In this case, DDR seeks a reasonable royalty. A reasonable royalty is defined as the monetary amount DDR and a Defendant would have agreed upon as a fee for use of the invention at the time prior to when infringement began.  A reasonable royalty can be a single lump sum amount, or it can be a running royalty. A lump-sum royalty is a royalty payment where the patent owner receives a single, up-front payment.  You may award a fully-paid, lump-sum royalty for the time period of the infringement.  A running royalty, on the other hand, is a royalty where the patent owner collects on-going, per-unit, or percentage payments over a period of time.

The determination of a damage award is not an exact science, and the amount need not be proven with unerring precision. You may approximate, if necessary, the amount to which the patent owner is entitled. In such case, while the damages may not be determined by mere speculation or guess, it is proper to award a damages amount if the evidence shows the extent of the damages as a matter of just and reasonable inference.

The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty.  At the same time, your damages are not meant to punish the Defendants. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and

the infringer would have agreed to in a hypothetical negotiation taking place at a time period just prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)    The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)    The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured website may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other websites of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the website made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be

27

able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.

In determining a reasonable royalty, you may consider whether the Defendants had acceptable non-infringing alternatives that were available at the time of the hypothetical negotiation and whether that would have affected the reasonable royalty the parties would have agreed upon.

You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

**- COUNSEL PRESENTS CLOSING ARGUMENTS –**

I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties. All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you. If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or those exhibits to you. Once you retire, you should first select your Foreperson and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your Foreperson is to fill in the verdict form in a manner which reflects your unanimous answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with the attorneys, the media or anyone about the case unless the Court orders otherwise.

You may now retire to the jury room to deliberate.